OPINION OF THE COURT
Daniel F. Luciano, J.
This is a CPLR article 78 proceeding commenced by the petitioner for a judgment annulling a certain declaratory ruling by counsel for the State Department of Environmental Conservation issued pursuant to 6 NYCRR part 619 and State Administrative Procedure Act § 204. Issues of first impression involving the right of the Department of Environmental Conservation to amend the official maps which designate tidal wetlands have been raised.
The petitioner is the contract vendee of a certain parcel of land located on Dune Road, Village of Quogue, Town of Southampton, County of Suffolk, New York. At the time the petitioner filed his initial application for a tidal wetlands *124 permit on August 27, 1981, a portion of the subject parcel was designated as tidal wetlands pursuant to ECL article 25. According to the petition the wetlands line shown on the official tidal wetlands inventory map in effect at that time "is located in such a manner as to make it possible to construct a single family residence on the property, in full compliance with all the development restrictions set forth in the regulations adopted by the Department [of Environmental Conservation] under the Tidal Wetlands Act”.
At the public hearing held upon the petitioner’s application the respondent took the position that the tidal wetlands line as reflected on the wetlands inventory map should have been further landward. According to the petition the tidal wetlands line proposed by the respondent "would preclude the construction of a single family residence on the property.”
The Administrative Law Judge presiding at the public hearing thereupon concluded that the hearing should be adjourned to permit proceedings pursuant to 6 NYCRR 661.27 (ECL 25-0201 [6]) for amendment of the inventory map which reflected the tidal wetlands line on the subject parcel.
The petitioner protested this determination by a letter to the Administrative Law Judge dated January 26, 1982, contending that his application could not be affected by a "remapping” done after submission of his application. The respondent nevertheless issued notice of a hearing concerning the remapping.
In response to the petitioner’s protests the Administrative Law Judge, by a letter dated February 9, 1982 stated, in part: "This raises a jurisdictional issue, the resolution of which is reserved to the Commissioner pursuant to 6 NYCRR, Part 619. Paragraph 624.7 (b) (8) of the Regulations exclude this issue from resolution by me. To obtain a declaratory ruling on a jurisdictional issue, a petition containing the necessary information required by Part 619 must be filed with the Department’s General Counsel in Albany.”
Accordingly, the petitioner sought a declaratory ruling of the respondent pursuant to 6 NYCRR part 619 and State Administrative Procedure Act § 204. This application resulted in Declaratory Ruling DEC 25-02 (DEC 25-02) which provided, in part: "that the Commissioner possesses the authority to alter an inventory map at any time pursuant to Article 25 and Part 661 and that an applicant is subject to any duly revised boundaries.”
*125 This conclusion is challenged by the petitioner in the current article 78 proceeding as arbitrary and capricious, unreasonable, irrational, unconstitutional and erroneous as a matter of law.
The petitioner notes that he has relied upon the tidal wetlands demarcation on the official map and has spent considerable sums of money in reliance thereon.
Among the respondent’s arguments is the contention that the present proceeding should be dismissed as premature since there has been a decision in neither the proposed map amendment hearing nor in the permit hearing. Either of those hearings, it is asserted, might result in a determination favorable to the petitioner which would render the adverse determination in DEC 25-02 moot.[1]
On its face there is apparent merit to this argument. As observed in Matter of New York City Horn. Auth. v Commissioner of Envtl. Conservation Dept. (83 Misc 2d 89, 93), "[c]ourts refrain from rendering hypothetical adjudications, as where the existence of a 'controversy’ is dependent on the happening of future events. (Prashker v United States Guar. Co., 1 NY2d 584; Park Ave. Clinical Hosp. v Kramer, 26 AD2d 613, affd 19 NY2d 958.)”
Under the present circumstances, however, the court cannot conclude that the above-quoted rule is applicable in the present situation. Pursuant to State Administrative Procedure Act § 204 "[a] declaratory ruling shall be subject to review in the manner provided for in article seventy-eight of the civil practice law and rules.” As the declaratory ruling has been rendered the petitioner has taken the next available step to obtain review. The controversy, moreover, does presently exist since the petitioner asserts a present right to proceed with the proceedings concerning his permit application without either the need to await the determination in the map amendment proceeding or to apply for a permit pursuant to an amended map in the event that the map is amended. When viewed against this analysis it is apparent that the declaratory ruling must be deemed an independent proceeding at least to the extent that it is subject to the direct judicial review sought by means of the present proceeding.
The conclusion reached in DEC 25-02 is supported by a 10- *126 page opinion. An essential part of the reasoning offered in support of the conclusion that the tidal wetlands map could be amended at any time is set forth in the following paragraphs quoted from DEC 25-02:
"The Wetlands mapping process is neither assumed nor intended to produce boundary lines pinpointing the exact location of the landward extent of indicator plant species. A line drawn on a map can represent 50 feet or more on the ground, depending upon the scale; this is an inherent and elementary limitation of all mapping and cannot be viewed as rendering DEC’S inventory maps deficient in any way. It is a necessary element of the plain meaning of the Legislature’s instruction to DEC to prepare maps. Section 25-0201 (2) of the Act is entitled 'Inventory of Tidal Wetlands’ and states that
" 'The inventory shall set forth the boundaries of such wetlands using such photographic and cartographic standards and techniques as the commissioner may deem reasonable and appropriate * * * [s]aid boundaries shall generally delineate all tidal wetlands * * *’ (Emphasis added.)
"The statute further recognizes the need to periodically update existing maps in order to accommodate the various natural and man-induced factors influencing the location of boundaries. Section 25-0201 (6) states that '[t]he statewide inventory shall be readjusted from time to time as may be necessary to reflect such natural changes as have occurred through erosion, accretion, and otherwise and also to reflect such other changes as have occurred as a result of the granting of permits pursuant to section 25-0403 of this act.’ Thus, it is clear that the Legislature did not envision that the inventory maps would reflect precise and static boundaries, but rather that they would serve to generally portray the extent of regulated areas, subject to modification as necessary to make these boundaries as accurate as possible. Such maps afford complete notice that an area contains wetlands subject to state protection.”
The court is not in full agreement with this reading of the statute.
While ECL 25-0201 sets forth the law governing existing tidal wetlands maps, it was written to provide for implementation of the tidal wetlands program and the initial preparation of tidal wetlands maps as well. Thus, subdivision (1) of section 25-0201 directed the Commissioner of the Department of Environmental Conservation to make an inventory as soon as *127 practicable of all New York tidal wetlands. Subdivision (2) provided that using that initial inventory the Commissioner was to prepare maps which would "generally delineate” all tidal wetlands. Such initial maps were "tentative”. (See, ECL 25-0201 [3].) Thereafter, public hearings were to be held and "[a]fter considering the testimony given at such hearing and any other facts which may be deemed pertinent and after considering the rights of affected property owners and the policy and purposes of [the Tidal Wetlands Act], the commissioner shall establish by order the final bounds of each such wetland. A copy of the order, together with a copy of the map depicting such final boundary lines, shall be filed in the office of the clerk of the county in which each such wetland is located.” (ECL 25-0201 [4].)
This language runs counter to the suggestion that the tidal wetland demarcations on the filed maps are intended to serve only as a sort of general notice that tidal wetlands are in the general area of a particular parcel. Such a position understates the significance of the placement of the lines establishing the tidal wetlands on the final maps.
This is not to say, however, that tidal wetlands maps are not subject to amendment. ECL 25-0201 (6) and the regulations thereunder (6 NYCRR 661.27 [b], [c], [d]) provide for amendments to such maps. The Commissioner, after appropriate procedures, may "alter the classification of a wetland shown on such map as may be necessary to conform such maps to actual on-site conditions” (6 NYCRR 661.27 [b] [1]).
The Tidal Wetlands Act embodies the public policy of the State of New York which is set forth in ECL 25-0102: "It is declared to be the public policy of this state to preserve and protect tidal wetlands, and to prevent their despoliation and destruction, giving due consideration to the reasonable economic and social development of this state.”
"The public policy of the State is what the Legislature says it is, where the Legislature has spoken, and a policy so declared sometimes has to be followed by the courts in areas beyond the express reach of the statute for the sake of consistency in the administration of the law”. (Matter of Steinberg v Steinberg, 18 NY2d 492, 497.)
In this case the statute does not expressly state that the Department of Environmental Conservation may adopt a policy of reviewing involved tidal wetlands inventory maps upon receipt of permit applications. But the suggestion of the stated *128 public policy is that the map amendment procedures should be liberally construed to enable the Commissioner to make such amendments as may be necessary to prevent the despoliation and destruction of tidal wetlands.
Budgetary or manpower restrictions, in addition to the continuous changes to which tidal wetlands are subject, may require that the State-wide inventory review for which ECL 25-0201 (6) explicitly provides be supplemented by review prompted by specific permit applications. The court cannot conclude that such a policy is arbitrary and capricious.
In further support of the conclusion that the subject map may be amended in the manner proposed by the respondent are, as noted in DEC 25-02, the provisions of ECL 25-0403 (1) which provides: "In granting, denying or limiting any permit under [the Tidal Wetlands Act], the commissioner shall consider the compatibility of the proposed activity with reference to the public health and welfare, marine fisheries, shellfisheries, wildlife, flood and hurricane and storm dangers, and the land-use regulations promulgated pursuant to section 25-0302 of [the Tidal Wetlands Act].”
Moreover, pursuant to ECL 25-0402 (1) the permit "applicant shall have the burden of demonstrating that the proposed activity will be in complete accord with the policy and provisions of [the Tidal Wetlands Act].”
To quote DEC 25-02 (at 8) these sections establish that "the Commissioner is constrained to judge permit applications in terms of compliance with the environmental protection accorded in the statute, not as constrained by the map.” In other words, it is protection of the tidal wetlands which is paramount.
The Court of Appeals stated in Matter of Johnson v Joy (48 NY2d 689, 691) that "[i]t is * * * hornbook law that the construction given statutes and regulations by the agency responsible for their administration will, if not irrational or unreasonable, be upheld (Matter of Howard v Wyman, 28 NY2d 434, 438).”
Although there are arguments to be made in support of the petitioner’s position, particularly the contention that there must be a purpose to the establishment of final bounds of tidal wetlands on filed maps (ECL 25-0201 [4]) and that reliance thereon would seem reasonable and appropriate it cannot be concluded that the conclusions of DEC 25-02 are irrational or unreasonable.
*129 Nor can the court conclude that the fact that the petitioner incurred expenses[2] in reasonable reliance upon the filed maps bars the amendment of the map at this stage of the proceeding.
This issue is analogous to that which exists when a property owner seeks a special permit or a building permit to use his property in an approved manner, only to find that the zoning ordinance which permitted the use has outlawed such use while the application is pending.
In such cases the courts have ruled that applications for permits to which the applicants are entitled may be properly rejected if the governing zoning ordinance is amended while the application is pending. (E.g., Matter of Sibarco Stas. v Town Bd., 24 NY2d 900; Matter of Nichol v Planning Bd., 28 AD2d 1077, affd 26 NY2d 1032; Arcelo Reproduction Co. v Modugno, 31 AD2d 642; see also, 1 Anderson, New York Zoning Law and Practice §§ 6.16, 6.17.)
Nor does the fact that the petitioner incurred expenses in preparation for construction of his proposed one-family residence and for the permit application establish a vested right upon which he may rely to bar a change in the demarcation of the tidal wetlands with respect to his property. Since no construction has been commenced no right has vested; expenditures on plans, specifications and building materials has been held not to create a vested right. (Rice v Van Vranken, 132 Misc 82, affd 225 App Div 179, affd 255 NY 541; see also, Reichenbach v Windward at Southampton, 80 Misc 2d 1031, affd on opn of Sup Ct, Lazer, J., 48 AD2d 909, lv dismissed 38 NY2d 912; 1 Anderson, op. cit. § 6.17.)
Accordingly, the respondent is entitled to a judgment denying the relief requested in the petition and dismissing the petition.

. In reply the petitioner indicates that the map has, in fact, been amended.

. No actual figures as to the amounts expended have been provided.