OPINION OF THE COURT
Bellacosa, J.
These cases pit the property interests of several individuals and corporations against the New York State Department of Environmental Conservation’s (DEC) efforts, under legislative mandate, to preserve freshwater wetlands on Staten Island. The battles have raged in the courts and in the legislative corridors for years and have culminated in these four proceedings with appeals in this court and in recent remedial legislation (L 1987, ch 408).
The common and decisive issue, among several raised by appellants, is whether DEC’s failure to designate their Bloeser’s Pond properties on a tentative map prepared in 1981 exempts the properties from DEC jurisdiction and regulation. Subsequent tentative and final mappings in 1986 and 1987 included the properties. We agree with the Appellate Division and affirm that court’s orders. DEC has continuing jurisdiction under the "Freshwater Wetlands Act” to identify and to map potential freshwater wetlands at least up to and including the promulgation of a final map.
*436 The "Freshwater Wetlands Act” (ECL art 24) was enacted in 1975 "to preserve, protect and conserve freshwater wetlands and the benefits derived therefrom, to prevent the despoliation and destruction of freshwater wetlands, and to regulate use and development of such wetlands” (ECL 24-0103). To accomplish this desirable goal, the Act assigns the Commissioner of DEC the formidable task, "as soon as practicable”, to study and to map parcels of wetlands throughout the State having an area of at least 12.4 acres or areas measuring less than 12.4 acres deemed of "unusual local importance” (ECL 24-0301 [1]). DEC is responsible for regulating the use of designated wetlands, and ECL 24-0701 prohibits landowners from engaging in certain activities on the designated properties unless a permit is obtained from DEC.
As stages of its review progress and are completed in a particular area, the DEC is directed to prepare tentative maps, detailing the boundaries of the areas determined up to that point in time to be freshwater wetlands (ECL 24-0301 [2]). Pending completion of the mapping process, interim permits are available for parcels tentatively designated as wetland (ECL 24-0703 [5]; 6 NYCRR part 662). Any landowner who is unaware of a particular parcel’s status may make a written inquiry to DEC, and the agency is required to respond, in writing, within 30 days (ECL 24-0703 [5]).
Prior to promulgation of a final map, DEC is required to give the community and affected landowners specific notice and opportunity to be heard (ECL 24-0301 [4]). Once promulgated, a final map may even be amended by the Commissioner to correct any deficiencies and to effect any additions, deletions or technical changes on the map. Prior to amending a final map, however, the Commissioner must first provide to each owner of record further notice and opportunity to be heard (ECL 24-0301 [6]; see also, 6 NYCRR part 664).
In 1981, DEC prepared a tentative map for Richmond County designating approximately 700 acres as freshwater wetlands. Although the statute does not require DEC to do so, the tentative map was filed with the Richmond County Clerk’s office. Shortly afterwards, a public hearing was held (ECL 24-0301 [4]). Based upon public comment and upon continued investigation of the area, DEC determined that it had not designated, on that first map, several hundred additional acres which qualified under the statute. As a result, in 1986, DEC issued a second tentative map which almost doubled, to 1,300 *437 acres, the designated freshwater wetland properties on Staten Island. In July 1986, another public hearing was held relating to the revised tentative map. In September 1987 a final map was promulgated.
The properties of appellants in these four cases were not designated on the 1981 tentative map, but they were on the 1986 tentative map and the 1987 final map. Indeed, the appellants in these four proceedings purchased interests in parcels of land located in the Bloeser’s Pond area of Richmond County only in 1984, when none of the subject parcels were as yet on any wetlands map.
In 1985, DEC began its study of the Bloeser’s Pond area as a possible freshwater wetland. Initially, DEC was considering designating the site as an area of "unusual local importance”, the alternative predicate under the statute. It was later discovered, however, that the site contained 14.6 acres of wetlands and could therefore qualify on aggregate acreage as a wetland, without invoking the "unusual local importance” standard.
While conducting its investigation for designation purposes, DEC discovered that the appellants were beginning to develop their newly purchased lands in an apparent effort to anticipate and avoid any subsequent wetlands designation. DEC formally notified the appellants by letter that their lands were tentatively identified as freshwater wetlands, and that if they wanted to continue development they had to apply first for a permit from DEC pursuant to ECL 24-0703 (5) (see also, 6 NYCRR part 662). The properties were still not on any wetlands map.
Rather than seeking the interim permits from DEC, appellants challenged, in article 78 proceedings, DEC’s attempt to regulate their properties. The appellants alleged that they had expended substantial money in preparing to build on their properties and that DEC had failed to give them any prior notice that their parcels constituted wetlands. They also claimed that DEC’s "interim designations” of the property as wetlands were arbitrary and capricious and constituted a deprivation of property without just compensation and without notice.
Supreme Court, Richmond County, granted the petitions solely on the ground asserted, sua sponte, by the trial court that DEC lacked "jurisdiction” over the subject properties. The Appellate Division unanimously reversed all four cases *438 and dismissed the petitions. It correctly upheld the DEC’S jurisdiction and actions in every respect (see, Matter of Wedinger v Goldberger, 129 AD2d 712).
We turn first to jurisdiction. The trial court erred in concluding that DEC had no jurisdiction over the subject properties. It alluded to the definition in ECL 24-0107 (1) defining a freshwater wetland, in part, as "lands and water of the state as shown on the freshwater wetlands map”. Then it reasoned that since appellants’ properties did not appear on the 1981 tentative map, the properties fell outside the statutory definition of a wetland and outside of DEC regulation under the Act.
The definition may not be interpreted so slenderly, for we would then be ignoring other relevant and integrated portions of the statutory scheme and the plain purpose of the "Freshwater Wetlands Act”. For example, ECL 24-0703 (5) provides: "Prior to the promulgation of the final freshwater wetlands map in a particular area and the implementation of a freshwater wetlands protection law or ordinance, no person shall conduct or cause to be conducted, any activity for which a permit is required under section 24-0701 of this article on any freshwater wetland unless he has obtained a permit from the commissioner under this section. Any person may inquire of the department as to whether or not a given parcel of land will be designated a freshwater wetland subject to regulation. The department shall give a definite answer in writing within thirty days of such request as to whether such parcel will or will not be so designated” (emphasis added).
This provision would be rendered meaningless if DEC lacked jurisdiction to regulate wetlands during the entire evolving period up to and including final mapping. The effective date of the legislation (L 1975, ch 614, eff Sept. 1, 1975) and the promulgation of a final map is the critical span of jurisdictional life we must examine for purposes of deciding these cases. The mere fact that a particular property was not placed on a tentative map is not decisive and certainly does not deprive the DEC of legislatively delegated jurisdiction. The length of time it has taken DEC to fulfill its mandate, however unfortunate, does not determine or diminish the jurisdiction delegated to it by the Legislature.
Sound statutory construction, relevant authorities, and the expert interpretation of the agency itself support the conclusion we reach, along with the Appellate Division, that DEC *439 has jurisdiction of the subject properties in these cases under the Act. We adopt the fine summary expressed by former Justice Sweeney: "The plain language of this subdivision [ECL 24-0703 (5)] proscribes activity on said lands prior to promulgation of a final wetland map unless a permit has been issued. This clear language, together with the express public policy and intent of the legislation as declared in ECL 24-0103, confers * * * jurisdiction in DEC for the entire period between the effective date of the act and promulgation of a final map. To hold otherwise would frustrate the clear intent and purpose of the legislation” (Matter of Tri Cities Indus. Park v Commissioner of Dept. of Envtl. Conservation, 76 AD2d 232, 235-236 [emphasis supplied], Iv denied 51 NY2d 706 [1980]; see also, Matter of Drexler v Town of New Castle, 62 NY2d 413 [1984]; see, Weinberg, Practice Commentary, McKinneys Cons Laws of NY, Book 171/2, ECL 24-0107, at 469-470, and 1988 Cum Ann Pocket Part, at 60).
Appellants, further, have contended that the mere tentative designation as a "wetland” amounts to a deprivation of property without just compensation and without prior notice, relying principally on French Investing Co. v City of New York (39 NY2d 587, appeal dismissed 429 US 990 [1976]). The reliance is misplaced and the argument fails. In French, the zoning ordinance converted private lands into public domain and a deprivation was effected by operation of the ordinance itself. In sharp contrast, under ECL article 24, tentative designation as a wetland does not prohibit development nor does it convert the ownership from private to public in any property sense; it merely requires that those holding property interests and wishing to engage in certain activities obtain an administrative permit. The Act itself does not constitute a deprivation because the landowner may continue development pursuant to a permit. Indeed, by resorting to the courts instead of exhausting available administrative remedies, appellants have acted prematurely and are not entitled to any relief on this "taking” issue (see, Matter of Parkview Assocs. v City of New York, 71 NY2d 274; Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510).
In Spears v Berle (48 NY2d 254 [1979]), we held that in order to sustain a claim of a taking, a landowner has "a heavy burden of proof’ (id., at 263). A "taking” can be established only if a permit has been sought and denied and the owner has demonstrated "that under no permissible use would the parcel as a whole be capable of producing a reasonable return *440 or be adaptable to other suitable private use” (id., at 263). In the instant cases, appellants, by not seeking a permit prior to commencing this action, have failed to take even the threshold step in this orderly two-step process.
Appellants insist, however, that their failure to seek a permit is not fatal to their taking argument. They direct us to First English Evangelical Lutheran Church v County of Los Angeles (482 US —, 107 S Ct 2378 [1987]) for the proposition that a temporary regulatory taking nevertheless requires compensation for the period of time prior to the final mapping. In First Evangelical, the Supreme Court stated: "We merely hold that where the government’s activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective” (482 US —, 107 S Ct 2378, 2389, supra). Significantly, the case does not change the requirement for a landowner first to establish that a taking has occurred. Here, the appellants have not and cannot make that indispensable showing without at least first seeking a permit under the Act, so First Evangelical is inapposite.
Relevantly, appellants were also afforded notice and opportunity to be heard at the time of the 1986 tentative mapping and again prior to final mapping. DEC’s notification to all affected landowners and to the community produced a July 1986 public hearing. The trial court’s view that each landowner was entitled to an individual hearing upon tentative designation of its wetlands finds no support in the statute or in the fair and practical implementation of this statutory scheme. It erroneously relied in this respect on 6 NYCRR 664.7 (a) (2) (i) which requires individual hearings only prior to amendment of a final map, a situation not present or pertinent here.
Appellants in two of the four present cases, Marine Equities and Chesed Avrhom, urge additionally that 6 NYCRR 664.7 (a) (2) (i) allows them to continue construction activity initiated on their properties prior to tentative designation as wetlands on a map. They are mistaken. The cited regulation applies only to landowners whose properties do not appear on a final map; here, the properties were not only on the final map, but also on the 1986 tentative map.
Appellants’ arguments that they relied on DEC’s 1981 *441 tentative map when they acquired, in 1984, their property interests and that DEC should be equitably estopped from enforcing the 1986 mapping designation are refuted by undeviating precedents of this court (see most recently, Matter of Parkview Assocs. v City of New York, 71 NY2d 274, supra; Matter of E.F.S. Ventures Corp. v Foster, 71 NY2d 359; Scruggs-Leftwich v Rivercross Tenants’ Corp., 70 NY2d 849, 851-852).
We also note that these controversies include appellants’ assertions that the statute does not authorize a second tentative mapping. While no one anticipated or desired that the identification and mapping process would span a dozen years, and while the statute does not expressly authorize a second tentative mapping, nothing prohibits this step (see, concerns expressed in Memoranda [1] of Association of Towns to Governor Carey [July 24, 1975] and [2] of the Secretary of State to Counsel to Governor [July 25, 1975], both in Governor’s Bill Jacket to L 1975, ch 614). This statute, when interpreted reasonably, contemplates a mapping process, however long; it does not create an artificial, intermittently circumscribed jurisdictional anomaly.
Moreover, appellants and other landowners are not left without remedies. While we cannot pass on the 1987 amendatory legislation, we note that shortly after the Appellate Division rendered its decisions in these cases, additional administrative review and appeal procedures were created especially for Richmond County landowners who may have suffered "undue hardship” as a result of the second tentative mapping (L 1987, ch 408). That legislation reflects, at the very least, a 1987 statutory recognition of the second tentative mapping step under the 1975 authorization for a mapping process (see, ECL 24-1104, 24-1105 [2]; 24-1301 [4]).
DEC has acted lawfully and within its jurisdictional powers in these cases.
Accordingly, the order of the Appellate Division in each case should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Hancock, Jr., concur; Judge Titone taking no part.
In each case: Order affirmed, with costs.