OPINION OF THE COURT
Edward J. Amann, Jr., J.
The petitioner[1] herein, Thomas C. Jorling, as Commissioner of the New York State Department of Environmental Conservation (hereinafter referred to as the DEC), seeks a judgment pursuant to CPLR article 78:
"a. annulling a Decision and Order of the Freshwater Wetlands Appeals Board proceedings numbers 87-5 and 87-6 in that the Decision and Order: (i) granted an unnecessary hardship exemption pursuant to section 24-1104 of the Environmental Conservation Law and (ii) directed DEC to issue a permit allowing the clearing and development of a regulated freshwater wetland;
"b. directing the Freshwater Wetlands Appeals Board to establish an objective standard for measuring ’unnecessary hardship’ that incorporates established legal precedents adapted from zoning law and -to apply that standard to all *167 'unnecessary hardship’ claims brought pursuant to section 24-1104 of the Environmental Conservation Law;[2]
"c. directing the Freshwater Wetlands Appeals Board to establish some other objective standard for measuring 'unnecessary hardship’ and to apply that standard to all 'unnecessary hardship’ claims brought under ECL section 24-1104.”[3]
In opposing the petition the Freshwater Wetlands Appeals Board (hereinafter referred to as the Board) argues that: (1) it was not required to set forth standards for determining "unnecessary hardship” prior to the issuance of its written decision; (2) the standards that it devised are rational and not arbitrary, capricious or irrational; and (3) the application of those standards to the application of JRA/Design Build Inc. was rational and not arbitrary and capricious.
STATEMENT OF FACT
In 1981, a tentative map was filed by the DEC designating approximately 700 acres of land on Staten Island as freshwater wetlands. The tentative map, delineating the wetlands, was filed with the Richmond County Clerk’s office. Thereafter, a public hearing was held at which public comments were received by the DEC. As a result of these comments, investigations concerning the wetlands were conducted by the DEC. Five years later, in 1986, a second tentative map was filed. The map almost doubled the size of the freshwater wetlands’ acreage. Approximately 1,300 acres were now designated as wetlands by the DEC. After another public hearing, the final map was filed in September of 1987.
The changes from the original tentative map led to numerous lawsuits challenging the second tentative, as well as the final map. These challenges ultimately found their way to the Court of Appeals, which dismissed the petitions, ruling that the DEC had acted properly and noting that the problems resulting from the mapping process, which took a dozen years, *168 might be ameliorated by amendatory legislation (see generally, Matter of Wedinger v Goldberger, 71 NY2d 428). At the same time legislative efforts were exerted in an attempt to alleviate the problems engendered by the second mapping.
The Legislature found that the double-mapping process had caused undue hardship for many property owners in Richmond County and sought to provide expedient remedies for those whose property had not been on the original map. It is the progeny of that legislative effort, which is currently before the court.
On June 16, 1988, the Board commenced hearings, pursuant to ECL article 24. The first hearings involved appeals for property owners in tax block 6510. It issued its order and decision on August 18, 1989. The decision upheld the designation of the area in question as a regulated freshwater wetland. It also found that the appellant JRA/Design Build Inc., had suffered an unnecessary hardship.
On August 29, 1989, the DEC requested a rehearing. The request was granted and after considering all of the points raised by the appellants and the DEC, the Board reaffirmed its prior decision on November 2, 1989.
I
The present notice of petition seeks a review of the standards enunciated by the Board, the process by which those standards were developed, and the determination rendered by it. The standard of review in such cases is whether or not the Board acted in an arbitrary and capricious manner, that is whether it is without a sound basis in reason and without regard to the facts. (Matter of First Terrace Gardens v McGoldrick, 1 NY2d 1.)
In essence, the first issue to be decided by the court is whether the Board improperly adopted a "case-by-case” approach in developing its hardship standard. The crux of the DEC’s argument is that the "case-by-case” method may only be utilized where the statute is clear and the scope well defined. The DEC interprets the cases cited by the Board in its reply memorandum and finds that they stand for the proposition that either the statute or the legislative history must set forth the factors and criteria necessary for a proper evaluation of the claim of "unnecessary hardship.” In this way, the *169 DEC argues, ample guidance would be provided to the parties appearing before the Board.
In reviewing the statute and its legislative history, the DEC has found nothing to give guidance to the Board in evaluating hardship claims. Given the predisposition of the DEC in dealing with freshwater wetlands, it is not surprising that they failed to discern any instructive language. A less biased approach, however, reveals that the statute, as well as the legislative history of the ECL and section 24-1104 provide for a balance between the concern for freshwater wetlands and the rights of property owners. In New York State the history of wetlands preservation — both tidal and freshwater — is permeated with a concern for a balanced approach to their protection.[4] The language of the statute when coupled with the legislative intent, provided the Board with sufficient guidelines through which it is to carry out the intent of the Legislature. The statement of legislative intent provided that: "[t]he legislature hereby finds and declares that the mapping of freshwater wetlands in Richmond county has created undue hardship for many property owners because of the mapping process. Legislation is necessary to provide procedural remedies applicable to designated freshwater wetlands in Richmond county not designated on the nineteen hundred eighty-one map. This legislation will serve to protect critical freshwater wetlands while balancing the just and proper interests of landowners whose property might otherwise be includible as freshwater wetlands and which were in fact proposed for designation as freshwater wetlands on the nineteen hundred eighty-six tentative map.” (L 1987, ch 408, § 1.)
It is noteworthy that the DEC has rejected any reference to the floor debate or to a letter submitted by one of the sponsors. While such material would not, in and of itself, supply missing guidelines, the court sees no reason why it cannot be used to complement other material relied upon by the Board in formulating its standard.
The intent of the Legislature is quite clear, because of the inordinate delay occasioned by the DEC’s formulating a final map for Richmond County undue hardships were created for *170 many property owners.[5] The Board, therefore, was left with the task of determining whether in a specific case an unnecessary hardship had occurred. It was also the intent of the Legislature to give the Board the widest possible latitude in determining what standard should be used in making its evaluation. Unlike the DEC, many members of the Legislature believed that it would be extremely difficult to devise guidelines that would cover all possible hardship situations. Their sentiment echoes that of Mr. Justice Harlan who remarked in a different context that: "[t]he infinite variety of cases and facets to each case would make general standards either meaningless 'boiler plate’ or a statement of the obvious”.[6]
While the court is well aware of the fact that floor debate generally may not be used to contradict the plain language of the statute or even the plain thrust of a committee report, it has been used to supplement a committee report. The case quoted in the DEC’s reply memorandum relied upon statements of the spokesman of the House Committee to supplement a committee’s report that was "not explicit” with regard to a certain phrase. (Duplex Co. v Deering, 254 US 443, 475.) In the case sub judice there is no committee report, however, the legislative history may be similarly supplemented by reference to the statements of one of the bills’ sponsor in the Assembly.[7]
The court would note that nothing in the floor debate contradicted either the plain language of the section in question or the intent of the Legislature as reported. In all cases, the purpose of the legislation was to ameliorate the hardship fostered upon property owners on Staten Island by the actions of the DEC. The sole issue is to identify the people who suffered an "unnecessary hardship”. The position taken by the DEC would severely restrict the number of members in this group — in contravention of the intention of the Legislature.
Therefore, after having heard and read all of the arguments submitted on behalf of both parties, the court finds that the *171 Board did not act in an arbitrary and capricious manner when it utilized a case-by-case method to develop standard for "unnecessary hardship”.
The court would note that regardless of the method undertaken by the Board to develop its standard, there was every reason to believe that the standard chosen would have been subjected to challenge by the DEC. The actions of the DEC have been characterized by footdragging and stonewalling, rather than helpfulness and good faith. Had the DEC actually sought to have the phrase "unnecessary hardship” defined by the Legislature, it could have brought this "omission” to the Legislature’s attention before the bill was signed. Similarly, they could have sought to have the statute amended to define the offending phrase. Instead, they have sat back and challenged every action of the Board — whether determining a standard to apply in the case of "unnecessary hardship” or determining a procedure to review the determination of a parcel as a freshwater wetland.[8]
II
The second issue raised by the DEC was that the "unnecessary hardship” standard adopted by the Board was neither objective nor uniformly applicable and was, therefore, arbitrary and capricious and an abuse of discretion. The Board in opposing the petition argues that it has adopted a rational and specific "unnecessary hardship” standard.
In its order and decision in Bisignano v New York State Dept. of Envtl. Conservation (June 29, 1989 [index No. 87-4]), the Board adopted the preliminary "standard” enunciated by the Legislature, namely, that the appellants must have owned the property in question prior to January 1, 1987 (ECL 24-1104 [1]). To that "standard” the Board added its own standard, which required that an appellant must have been harmed in some way by the double mapping process (see, Bisignano v New York State Dept. of Envtl. Conservation, supra, at 8-14). The Board rejected two proffered standards in formulating its own standard. The first standard was contained in the case of Matter of Otto v Steinhilber (282 NY 71, rearg denied 282 NY 681), which dealt with hardships within a zoning context. The Board found that certain definitional problems relating to the phrases "neighborhood” and "essen *172 tial character of the locality” rendered this test unsuitable for application to freshwater wetlands.
The second standard was arguably promulgated under ECL article 25 and dealt with application for moratorium permits under the Tidal Wetlands Act. Again, the Board reviewed the standard and rejected it; finding that its ambit was too narrow. The single standard for hardship was determined by whether a "serious financial burden” would be created by the failure to grant a permit during the moratorium (6 NYCRR 660.1 [h]).
Based upon its analysis of the legislation, the Board concluded that the hardship must of necessity relate to the mapping process. The standard, therefore, required that some form of reliance had taken place. If there had been reliance, the Board would then consider the factors that constituted an unnecessary hardship. The DEC argues that without a standard such as the one articulated in Matter of Otto v Steinhilber (282 NY 71, rearg denied 282 NY 681, supra), confusion will result, both for the appellants and the DEC.
The DEC also attacks the use of "constructive reliance” by the Board as a threshold standard.
A review of the myriad of arguments contained in the affirmations and memoranda of law leads the court to conclude that the parties are only interested in arguing whether the Board must use the DEC’s standards or whether the DEC even formulated an unnecessary hardship standard incorporating the Otto test.
The sole purpose of an objective standard is to insure that the process of judicial review pursuant to CPLR article 78 can take place. Such a review is provided for by the legislation before the court (ECL 24-1105). In the case of Matter of Nicholas v Kahn (47 NY2d 24, 34), cited by the DEC, the court noted that whatever the standard or rules used by an agency they will be rejected unless they: "provide any objective standards sufficient to invoke judicial review”.
A review of the standard adopted by the Board in Bisignano (supra), which standard has not been challenged by the DEC in an appeal, leads the court to find that it provides the court with a basis against which the Board’s determination can be reviewed. The court can readily review the basis for the determination of unnecessary hardship when measured against the facts alleged by the appellants.
These facts should indicate that the appellant has been *173 adversely affected as a result of the filing of the second tentative map. The form and the quantum of the hardship can vary. To date the decisions of the Board reveal four examples of hardship that can give rise to an undue or unnecessary hardship. The first type involved the purchasing of a parcel that had not been mapped by the first mapping and is now unable to be developed. (See, Mungavin v New York State Dept. of Envtl. Conservation, Aug. 18, 1989 [FWAB docket No. 87-35].)
The second type involved parcels that had been purchased after the filing of the first tentative map, but which have not been developed due to inordinate delays on the part of the DEC (see, Bisignano v New York State Dept. of Envtl. Conservation, supra).
The third type of hardship involved the expenditure of funds for development, which has halted as a result of the filing of the second tentative map (see, JRA/Design Build v New York State Dept. of Envtl. Conservation, Aug. 18, 1989 [FWAB docket Nos. 87-5, 87-6]). The fourth type of hardship involved the loss of an investment, where the property was purchased for future sale with the anticipated profits to be used for retirement income (see, Recchia v New York State Dept. of Envtl. Conservation, Oct. 11, 1989 [FWAB docket No. 87-36]).
Turning to the use of the concept of "constructive reliance”, the court finds that it realistically portrays the developmental pattern that existed in Richmond County prior to the second mapping. Given the reticence of the DEC to provide "objective” answers to questions concerning the exact location of wetlands, the only available tool from which prospective purchasers could fashion a purchasing decision was the tentative map filed in 1981. Surely few purchasers would have been willing to purchase property had they known that a second tentative map affecting their property was in the offing. Accordingly, reliance was almost axiomatic. That being the case of the use of this concept as a preliminary test is appropriate. It provides only the most basic evidence of hardship.[9] In order to establish actual unnecessary hardship, more evidence must be adduced by the appellants. This may take the form, as previously noted, of developmental costs, loss of investment, or the suffering of a developmental hiatus.
*174 After reviewing all of the above, the court finds that the standards thus far adopted by the Board will enable the court to adequately review the determinations in a proceeding to review. The Board has already developed a reservoir of criteria which will permit it to dispose of most of the appeals that will come before it for determination. The utilization of these multifaceted standards rather than trying to fashion a single, all-encompassing standard is in keeping with the legislative mandate. For if the Legislature had sought one such standard it could have promulgated it. Similarly, if it sought formal rule making by the Board it could have required it.
Ill
The third issue before the court involves the decision of the Board in the appeal of JRA/Design Build v New York State Dept. of Envtl. Conservation (Nov. 23, 1988 [FWAB docket Nos. 87-5, 87-6]). The DEC has sought to annul the decision on the following grounds: (1) The Board’s determination that the designation of JRA’s property as freshwater wetland has caused JRA unnecessary hardship is arbitrary and capricious and irrational; and (2) the Board’s determination to direct DEC to issue JRA a freshwater wetland permit to develop its parcel with one house exceeds the Board’s jurisdiction.
In November of 1984, the appellants, JRA/Design Build Inc. (hereinafter referred to as JRA), purchased a lot in tax block 6510. The lot designated lot number 1 sold for $40,300. There were additional costs for the closing, attorney’s fees and a title search[10] totaling approximately $1,650.
In March of 1985, JRA purchased an adjacent lot from the City of New York at public auction. The price for this lot, designated lot number 7 in tax block 8510, was $21,000. Approximately $350 in additional costs were incurred.
The purported purpose of these purchases was to construct a family compound for Mr. and Mrs. Anzalone, as well as his sister and mother. In order to accomplish this goal JRA commissioned the services of an architect and an engineer. The costs for their services, which were discontinued when the property was designated a wetland, were $6,000.
There was also a charge of approximately $2,100 for JRA’s share of the cost of an environmental consultant, who had *175 been hired by JRA and other landowners involved in the wetlands proceedings.
Prior to the designation of the parcel in question, septic plans had been submitted and approved, as had other necessary approvals. A paving plan had also been approved, which provided for a variance from paving Billou Street.
In claiming that the Board’s decision is arbitrary and capricious, the DEC’s arguments are fourfold: (1) the concept of "constructive reliance” was improperly relied upon; (2) the concept of "permit limbo” has similarly been misapplied; (3) the Board may not direct the DEC to issue a permit to JRA or purchase its property; (4) the determination of the Board that JRA suffered an "unnecessary hardship” is arbitrary and capricious, because it is not supported by factual findings.
As a general rule the judicial function is exhausted where the court finds a rational basis for the agency’s determination (Matter of First Terrace Gardens v McGoldrick, 1 NY2d 1, supra). Therefore, even if the court would have reached a different conclusion, it may not substitute its decision for that of the board or agency. (Peconic Bay Broadcasting Corp. v Board of Appeals, 99 AD2d 773.) Similarly, in the area of facts, the court may not interfere unless there is no rational basis for the decision. (Matter of Colton v Berman, 21 NY2d 322, 334.)
Turning to the issues before it, the court finds that the concept of "constructive reliance” was not improperly used by the Board. As previously stated, "constructive reliance” formed only the threshold necessary for the Board to consider the issue of hardship. It was not, as claimed by the DEC, an irrebuttable presumption. The DEC has cited numerous cases involving land-use law and zoning law, to bolster its argument that the Board has improperly applied the concept of "constructive reliance”. While these cases may be applicable to other areas of law, they are not appropriate here, because the Legislature has passed a bill with the specific purpose of granting relief to a small group of landowners who have been injured by the actions — or rather inaction — of the DEC.
As a general proposition of law, the courts will not require a party to do an act which is futile. Here, had the appellant attempted to contact the DEC to determine if its parcel was on any future freshwater wetland map, it would not have been given a definitive answer. During oral argument the representatives of the petitioner were unable to advise the *176 court of cases in which they had advised people that their land was due to be mapped as a freshwater wetland parcel. Obviously, the DEC was following a cautious approach which required them to refrain from making a statement until the matter was finally determined.
Keeping these circumstances in mind, the Board refused to disqualify from consideration of hardship any parcel owner simply because they had not sought information from the DEC. Based upon the totality of the circumstances the court finds that the use of the concept of "constructive reliance” was not arbitrary and capricious.
Similarly, the court finds that the use of the concept of "permit limbo” was not arbitrary and capricious. A review of the transcript of the hearing[11] indicates that many individuals who owned parcels in block 6510 did not seek permits because they were going to sell the property at a later date and use the funds therefrom for their retirement.
Still others did not file for permits, awaiting to see what happened to those who did file for such permits. They did not want to waste their money in filing for a permit if it would not be granted. In all known cases the permit applications were held up pending a study.
The DEC conceded that these permits were held up pending an environmental impact statement (hereafter referred to as EIS), which had not been prepared.
In the case of JRA, the Board found that no such permit was filed, although Mr. Anzalone testified that he had filed for a permit.
The evidence before the Board indicated that whether a permit had been filed did not really matter. The fact was that those who had filed for permits were fated to wait until an EIS had been filed — to the court’s knowledge, they are still waiting. Accordingly, the court finds that the use of the concept "permit limbo” aptly described the circumstances in block 6510. Therefore, it was not arbitrary and capricious for the Board to consider this factor in determining unnecessary hardship.
The next challenge by the DEC relates to the Board’s lack of authority to review the DEC’S permit practices. The DEC in *177 effect argues that the Board can review the process, but cannot force it to issue a permit. It also argues that since JRA never filed for a permit the Board is without authority to force the allegation by arguing that the only logical interpretation of the legislation is that such authority must have been intended. The Board reasoned that any other interpretation would have resulted in either greater damage to the wetlands or continued hardship for the appellants.
In the former case, designation without the issuance of a permit containing mitigation conditions would not be consistent with the purpose of protecting the wetlands. This purpose would only be served by the issuance of a permit containing mitigating conditions. In the latter case, remanding the case to the DEC for reconsideration would only result in continued delay, because of the lack of either an EIS or a generic environmental impact statement.
The court finds the interpretation of the Board to be preferable to that of the DEC. If the DEC’s interpretation is adopted, it would result in further delay and hardship. It would also appear that the statute would expire long before the actual permit applications were passed upon. The court must assume, as did the Board, that the Legislature had some idea of what it was doing when it passed the legislation. If one were to accept the various arguments suggested by the DEC throughout their papers one would be required to conclude that the Legislature was totally incompetent. The Board in its attempt to follow the legislative mandate has sought by its action to navigate a course between the Scylla of property owners’ rights and the Charybdis of wetlands protection. The court finds that it has acted appropriately in attempting to remedy unnecessary hardships, while at the same time balancing the need to protect freshwater wetlands.
Accordingly, after reviewing the statute in question the court finds that the Board has been given the authority to remand cases to the DEC with directions to either issue a permit or to purchase the property. Such ancillary power to implement the policies enacted into law must be assumed.
The final argument raised by the DEC relates to factual findings of the Board in its determination. The DEC opines that JRA has failed in its burden of proving "unnecessary hardship”. Without going into all of the factors considered by the Board, suffice it to say that the appellants had expended funds for the purchase of the property and thereafter had *178 begun incurring various developmental costs. Accordingly, there was a rational basis in the record for the Board’s decision. That being the case, the court will not attempt to interfere with its determination. (Matter of Colton v Berman, 21 NY2d 322, 334, supra.) Although the court might not agree with the decision of the Board, it may not replace the Board’s determination with its own, where rationality in the decision-making process has been demonstrated. (Matter of Procaccino v Stewart, 25 NY2d 301.) Were the court to do otherwise, it would have overstepped its authority to review.
Accordingly, it is ordered, adjudged and decreed that the motion for a judgment annulling the decision and order of the Freshwater Wetlands Appeals Board and directing it to establish an objective standard is denied and the petition is hereby dismissed.
Upon the filing of this judgment the court directs the petitioner DEC to file a second and third request for judicial intervention, at no additional costs, together with notices, causing the remainder of the petitions, index Nos. SP 8697/89 and SP 8698/89 to be reassigned for determination.

. All references are to the notice of petition (index No. SP 8410/89), unless otherwise noted.

. The court’s judgment herein regarding this objection, as well as the following one, shall be binding upon the parties, according to a stipulation placed upon the record. The stipulation affects the following appellants: (1) Steven Scarano, FWAB docket No. 87-9 (index No. SP 8698/89); (2) Peter Vitale, FWAB docket Nos. 87-39 and 89-5 (index No. SP 8697/89); and (3) Pietro Recchia, FWAB docket No. 87-36 (index No. SP 8697/89).

. This item was not alleged in the present action of JRA/Design Build Inc., FWAB docket Nos. 87-5 and 87-6 (index No. SP 8410/89). However, it is being considered by the court because it has been argued in the papers and is applicable to all of the petitions.

. See, statement of Governor Nelson Rockefeller in approving Laws of 1973 (ch 790), calling for a balance between protection of tidal wetlands and economic and social needs of the State. (1973 McKinney’s Session Laws of NY, at 2356.)

. This delay, which was unanticipated, but took over a dozen years was also noted by the Court of Appeals in Matter of Wedinger v Goldberger (71 NY2d 428, 441).

. McGautha v California, 402 US 183, 208.

. The court would also note that all of the cases dealing with the use of legislative debate have dealt with the interpretation made by a court — and not by an agency, as we have here. These cases also deal only with the interpretation of how one statute interfaced with another. Again, that is not the case here.

. See, Jorling v Freshwater Wetlands Appeal Bd., Sup Ct, Richmond County (index No. 8710-89) presently under consideration before Cusick, J.

. This threshold concept was clearly not used as an irrebuttable presumption, as the DEC has maintained.

. It should be noted here that the title search did not reveal that the property was a wetland; neither did the tentative map filed at the Richmond County Clerk’s office.

. The hearing in question dealt with block 6510, and involved individuals other than JRA. However, the testimony and exhibits apply, in general, to the entire block. The DEC agreed in effect to deal with the block as a whole rather than a parcel-by-parcel basis.