OPINION OF THE COURT
Robert J. Lunn, J.
This is a proceeding pursuant to CPLR article 78 wherein petitioner seeks an order enjoining the respondent, Depart *569 ment of Environmental Conservation (DEC), from amending a certain freshwater wetlands map, preventing respondent from further interference with the construction on petitioner’s property or, in the alternative, ordering the commencement of a condemnation proceeding to compensate petitioner for the taking of its property by the State without due process of law and without just compensation.
In 1993, petitioner purchased property in the Town of Henrietta and County of Monroe for the construction thereon of a residential subdivision. This purchase was accomplished only after petitioner’s representatives had assured themselves that there was not located on the property any mapped freshwater wetlands. The final freshwater wetlands map for Monroe County was filed by the Department of Environmental Conservation on May 29, 1986. The closest wetland to petitioner’s property is designated on said map as HR-19. This wetland is located anywhere from 250 feet to 1,000 feet distant from petitioner’s land. Commencing in 1994, petitioner sought the various approvals necessary from the Town of Henrietta in order to develop its residential subdivision on this property. On May 23, 1995, petitioner received final site plan approval from the Town of Henrietta Planning Board.
On July 28, 1995, in response to a request from another Department of Environmental Conservation employee, John R. Hauber, a wildlife biologist, employed at Region 8 of the Department of Environmental Conservation, visited petitioner’s property to determine whether any of the property qualified for inclusion on the freshwater wetlands map for Monroe County. During this inspection, Mr. Hauber placed flags printed with the words "wetland delineation” on vegetation located in the southern portion of petitioner’s property to delineate the boundary of what he identified as wetland vegetation. In the latter part of August 1995, petitioner’s representatives were notified that wetland vegetation existed on a portion of the property. Petitioner claims that its representatives were told at this time by employees of the Department of Environmental Conservation to cease all development activities on the property until a determination could be made whether the property fell within freshwater wetlands. Apparently, from this time through December 15, 1995, discussions and negotiations were held between representatives of the petitioner and the Department of Environmental Conservation regarding the impact that amending the final wetlands map would have upon petitioner’s development.
*570 On November 17, 1995, the Department of Environmental Conservation began the formal process of amending the wetlands map for Monroe County when it mailed a notice to petitioner and other affected landowners. A public hearing on the map amendment proposal was held on December 19, 1995 and January 16, 1996. To date, the DEC has not made a final determination regarding the map amendment proposal. Additionally, petitioner has not applied for any freshwater wetlands permit relative to its development.
Petitioner argues that the Department of Environmental Conservation does not have jurisdiction over any alleged "wetlands” that were not shown on the final filed freshwater wetlands map; that the Department of Environmental Conservation should be equitably estopped from amending the wetlands map in light of its detrimental reliance on the officially filed final map and the verbal cease and desist order allegedly made by Matt Sanderson, a biologist with Region 8 of the Department of Environmental Conservation; that, in the event the Department of Environmental Conservation is free to amend the wetlands map, that petitioner’s regulated activity is not subject to the moratorium provided for in 6 NYCRR 664.7 (a) (2) (i), but is grandfathered pursuant to that regulation; and finally, that the Department’s conduct and plans to amend the wetlands map constitute a taking of its property.
Preliminarily, respondent asks that this proceeding be dismissed as against the State of New York, as the State can only be sued in the Court of Claims. By letter dated February 3, 1996, and as represented orally at Special Term, petitioner indicates no objection to dismissing the State of New York as a party. Accordingly, that application is granted and the petition is dismissed as against the State of New York.
Turning to the merits of petitioner’s arguments, ECL article 24, the Freshwater Wetlands Act, is a comprehensive statutory scheme designed to, "preserve, protect and conserve freshwater wetlands and the benefits derived therefrom * * * and to regulate use and development of such wetlands.” (ECL 24-0103.) The Department of Environmental Conservation is charged with identifying and mapping freshwater wetlands throughout New York which have an area of at least 12.4 acres. (ECL 24-0301.) After final maps are filed, they may be amended in order "to correct any errors on the map, to effect any additions, deletions or technical changes on the map”, and to reflect changes as have occurred to the wetlands through erosion, accretion, or otherwise. (ECL 24-0301 [6].) The freshwater wet *571 lands map amendment process is further detailed in the regulatians promulgated by the Department of Environmental Conservation at 6 NYCRR 664.7 (a) (2) (i).
Clearly, this comprehensive and detailed statutory scheme grants the DEC jurisdiction over all wetlands, whether mapped or unmapped. Petitioner’s initial reliance on the statutory definition of a wetlands as "lands and waters of the state as shown on the freshwater wetlands map” (emphasis added) as set forth in ECL 24-0107 (1) is misplaced. (Matter of Wedinger v Goldberger, 71 NY2d 428 [1988].) Since a final wetlands map may be amended at any time (ECL 24-0301 [6]), petitioner, like other property owners whose lands contain wetland vegetation, runs the risk that the final wetlands map might be amended to include its property. (Matter of D.B.S. Realty v New York State Dept. of Entl. Conservation, 201 AD2d 168 [3d Dept 1994].) Petitioner’s first argument that the DEC lacks jurisdiction over its wetlands is therefore rejected.
Petitioner also may not claim that the DEC should be equitably estopped from amending the wetlands map since petitioner purchased the property in reliance upon the final map which did not show its property containing regulated wetlands. The Court of Appeals addressed this argument in Wedinger (supra) and summarily rejected it. (Matter of Wedinger v Goldberger, 71 NY2d, at 441, supra, citing Matter of Parkview Assocs. v City of New York, 71 NY2d 274 [1988].) As a general rule, the doctrine of estoppel does not lie against a governmental agency to prevent it from discharging its statutory duties. (Matter of Parkview Assocs. v City of New York, 71 NY2d 274, 282.) An exception to this rule exists where improper conduct by a governmental official is relied upon to one’s detriment. (See, Ippolito v City of Buffalo, 195 AD2d 983 [4th Dept 1993].)
The improper conduct asserted by the petitioner only in its memoranda of law is the so-called verbal cease and desist order made by DEC biologist, Matt Sanderson, in late August 1995. However, the evidence before the court indicates that the petitioner did not discontinue its development activities due to any statement made by Mr. Sanderson. Activity stopped while petitioner sought to negotiate mitigating measures with the DEC in an attempt to avoid its property being included on an amended wetlands map. Bernard J. Iacovangelo, president of petitioner, Forest Creek Equity Corp., at paragraph 9 of the petition, indicates that activity ceased "out of respect for the DEC”. Nowhere in the petition or any other affidavit does he ever mention reliance on any verbal cease and desist order. *572 The court is not able to consider factual allegations raised in a memorandum of law that are not part of the record before the court. (See, Matter of D.B.S. Realty v New York State Dept. of Envtl. Conservation, supra, at 173.) Additionally, in a letter to Paul D’Amato, an attorney with Region 8 of the DEC, dated December 30, 1995 and annexed to the petition as exhibit D, Mr. Iacovangelo acknowledges that he voluntarily entered into discussions and negotiations with the DEC even though he was "under no obligation whatsoever to cooperate with the DEC”. The letter further acknowledges that petitioner could have commenced grading and grubbing its building lots. Certainly, the tenor of this letter does not indicate that petitioner felt obligated to abide by any verbal cease and desist order.
The situation is analogous to that in Matter of Slemp v New York State Dept. of Envtl. Conservation (176 AD2d 1122 [3d Dept 1991]), wherein that petitioner relied to his detriment on erroneous oral advice given to it by two DEC employees. Those oral statements did not relieve that petitioner of the obligation to obtain a freshwater wetlands permit prior to constructing improvements on its property. (See, Matter of Slemp v New York State Dept. of Envtl. Conservation, 176 AD2d, at 1124, supra.) Here, petitioner Forest Creek Equity Corp. chose to cease development activities on its property while negotiating with the DEC, even though it was free to proceed with development of its residential subdivision up to the time it was formally notified on November 17, 1995 that the map amendment process had commenced. It cannot now claim detrimental reliance on verbal statements of a DEC employee.
Petitioner also claims that prior to its receipt of notice that the wetlands map was sought to be amended, it had already commenced regulated activity which was grandfathered pursuant to 6 NYCRR 664.7 (a) (2) (i). That regulation provides, in pertinent part: "Once the announcement of a proposed amendment has been made, no activity subject to regulation pursuant to the act shall be initiated within the area that is the subject of the proposal until the commissioner has either amended the map or denied the amendment. However, no activity which has already been initiated at the time of the announcement, within an area that is proposed as an addition to the map, will be subject to such regulation.”
"Regulated activity” is defined at 6 NYCRR 663.2 (z) as:
"Regulated activity means any form of draining, dredging, excavation or mining, either directly or indirectly; any form of dumping or filling, either directly or indirectly; erecting any *573 structures, constructing roads, driving pilings or placing any other obstructions whether or not changing the ebb and flow of the water; any form of pollution, including but not limited to installing a septic tank, running a sewer outfall, discharging sewage treatment effluent or other liquefied wastes into or so as to drain into a wetland; or any other activity which substantially impairs any of the several functions or benefits of wetlands which are set forth in section 24-0105 of the act. These activities are subject to regulation whether or not they occur upon the wetland itself, if they impinge upon or otherwise substantially affect the wetland and are located within the adjacent area” (emphasis added).
Petitioner points to two activities which they commenced prior to the announcement of the proposed map amendment as regulated activities, thereby exempting all of its activities from the requirement of obtaining a wetlands permit. The first was an archeological survey requested by the DEC and conducted by the Rochester Museum and Science Center for petitioner in which 644 shovel tests were undertaken in 79 different areas of the property, including some within the proposed map amendment. The second activity was petitioner’s employment of Carl Grasta Grading and Excavating which performed "shovel tests” on the site. This contractor dug several test holes on the property approximately 12 feet deep, 4 feet in length and 6 feet in width. These pits were done in order to examine the composition of the subsoil, i.e., presence of rock, in order to more accurately predict development costs. It is significant to note that no actual construction of any of the infrastructure for the subdivision has occurred.
The parties have not cited, nor has the court found, any case law which interprets the types of exempted activities contemplated by 6 NYCRR 664.7 (a) (2) (i). The court does note, however, that the catch-all section of 6 NYCRR 663.2 (z) which defines regulated activity does quantify the activity as that "which substantially impairs any of the several functions or benefits of wetlands”.
6 NYCRR 664.7 (a) (2) (i) in allowing certain activities to be exempt from regulation is an acknowledgement that landowners have certain vested rights in their property. The vested rights doctrine allows an owner to be exempt from the application of zoning laws or amendments thereto where the owner has undertaken substantial construction and made substantial expenditures to the property prior to the effective date of a zoning law or amendment. (See, Matter of Ellington Constr. *574 Corp. v Zoning Bd. of Appeals, 77 NY2d 114 [1990].) The developer in Matter of Ellington Constr. Corp. had completed a substantial portion of its residential subdivision by installing drainage facilities, water and sewer lines, fire hydrants, curbs and underground telephone and electric service. (Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals, supra, at 119.) Expenses incurred for permit applications and construction preparation, where no actual construction has occurred, has been held insufficient to trigger the vested rights doctrine. (Matter of Thompson v Department of Envtl. Conservation, 130 Misc 2d 123, 129 [Sup Ct, Suffolk County 1985].)
The DEC has also interpreted the provisions of 6 NYCRR 664.7 (a) (2) (i) in a Freshwater Wetlands Enforcement Guidance Memorandum issued on February 4, 1992 to DEC executive staff, regional and division directors. At page 20 of that Enforcement Guidance Memorandum, it states, "Whether an activity has been initiated prior to the announcement [of a proposed wetlands map amendment] requires a case by case analysis”. The memorandum goes on to cite two examples of activity in order to provide DEC personnel with guidance. These are:
"(1) If the landowner has constructed a foundation for a house at the time of the announcement, completion of the structure would not require ah Article 24 permit; however, a permit would be required for construction of ancillary structures proposed to be built within the wetland or adjacent, area, such as driveways, decks, pools, detached garages or tennis courts, or any filling, draining or excavation.
"(2) If only preliminary site preparation activity such as construction of an access road or clearing and grading had occurred, actual construction of building or structures would be prohibited as of the time of the announcement.”
The activities undertaken by petitioner were done in conjunction with obtaining necessary approvals for the construction of its residential subdivision or were preconstruction activities. They were not done as part of any actual construction of the subdivision. They certainly are not similar to the examples set out in the DEC’s Enforcement Guidance Memorandum. They also are not of the substantial nature as found by the Court of Appeals in Matter of Ellington Constr. Corp. (supra). This court holds that since no actual construction had been commenced, no rights had vested triggering the exemption or grandfathering of 6 NYCRR 664.7 (a) (2) (i). To hold otherwise would allow such minimal activity as was pres *575 ent in this case to defeat the entire statutory and regulatory scheme of the Freshwater Wetlands Act. The Department of Environmental Conservation has interpreted petitioner’s activities as also not triggering the regulatory exemption. The court finds this interpretation of the regulation to be not irrational or unreasonable. It is therefore entitled to great deference. (Matter of Nieckoski v New York State Dept. of Envtl. Conservation, 215 AD2d 761 [2d Dept 1995]; Matter of Thompson v Department of Envtl. Conservation, 132 AD2d 665 [2d Dept 1987].)
Lastly, there has been no unconstitutional taking of petitioner’s property as petitioner has not been denied a permit to develop its land. Petitioner has yet to apply for a freshwater wetlands permit. Petitioner is therefore premature in alleging a taking. (Matter of Wedinger v Goldberger, 71 NY2d 428, 439, supra, citing Spears v Berle, 48 NY2d 254 [1979]; Matter of Parkview Assocs. v City of New York, 71 NY2d 274 [1988], supra; Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510 [1986].)
For the foregoing reasons, respondent is entitled to judgment denying the relief requested in the petition and dismissing the petition.