■ In the Matter of ROBERT H. WEDINGER et al., Respondents, v HELENE G. GOLDBERGER et al., Appellants.—In a proceeding pursuant to CPLR article 78, *inter alia,* to review a cease and desist order dated October 21, 1985, issued by the New York State Department of Environmental Conservation (hereinafter the DEC), the appeal is from an order and judgment (one paper) of the Supreme Court, Richmond County (Kuffner, J.), dated February 28, 1986, which granted the petition and determined that a certain parcel of real property owned by the petitioners was not subject to the DEC's regulation under the Freshwater Wetlands Act (ECL art 24).

Ordered that the order and judgment is reversed, on the law, with costs, and the proceeding is dismissed.

It is undisputed that in 1981, the DEC prepared a tentative freshwater wetlands map for Richmond County as authorized by ECL 24-0301 (2) and (3). The tentative map identified several wetland areas on Staten Island, but did not indicate that the property which is the subject of the instant proceeding contained wetlands. Although there is no statutory requirement that it do so, the DEC thereafter filed the map in the office of the County Clerk, Richmond County. Affected landowners and the general public were then given notice of a hearing to discuss the promulgation of a final freshwater wetlands map for Richmond County *(see,* ECL 24-0301 [4]). Upon the conclusion of the public hearing, the DEC apparently continued the process of studying and designating additional wetland areas in the county, and no final map has as yet been promulgated by the Commissioner.

The petitioners are the alleged owners of a certain parcel of real property located in Richmond County. In 1985 they began to secure various approvals from local agencies for the construction of a single-family house on the parcel. After having some test borings performed on the property, the petitioners received a letter dated October 21, 1985 from the office of the

DEC's regional attorney. The letter ordered them to cease all construction activities on the site because the property was subject to regulation under the Freshwater Wetlands Act (hereinafter the act) and a permit was required for the performance of such work. After an informal attempt to compromise the matter with members of the DEC's regional staff proved fruitless, the petitioners, without seeking a permit, commenced the instant proceeding to set aside the cease and desist order and to prohibit the DEC from attempting to regulate the parcel. The petition alleged, *inter alia,* that the petitioners had expended significant sums of money in preparing to build on the property and that the DEC had failed to give them any prior notice that the parcel contained wetland. The petitioners further claimed that the DEC's interim designation of the property as wetlands was arbitrary and capricious and constituted a deprivation of property without due process of law.

In its answer to the petition, the DEC averred that a locale in close proximity to the petitioners' property known as Bloeser's Pond was studied and tentatively mapped as a freshwater wetland area in May 1985 and a similar mapping of the petitioners property was performed in August 1985. While the tentative designation of these areas as wetlands was made in the DEC's regional office and was not reflected on the copy of the 1981 tentative map filed in the County Clerk's office, the DEC maintained that it was authorized by the act to make additional wetlands designations at any time prior to the promulgation of the final map for the county, and that notice and a hearing would be provided to all affected landowners and to the petitioners prior to the promulgation of a final map by the Commissioner. The DEC also stated that its designation of the property as wetland was accurate and suggested that the petitioners apply for an interim permit to develop the property.

The Supreme Court, Richmond County, subsequently issued a decision granting the petition *(Matter of Wedinger v Goldberger,* 131 Misc 2d 109). In doing so, the court reasoned that the subject property did not fall within the definition of "freshwater wetlands" as found in ECL 24-0107 (1) and could not be regulated by the DEC because it was not listed as a wetlands area on the 1981 tentative map filed in the County Clerk's office. The court further found that the DEC's 1985 designation of the petitioners' property was the equivalent of a map amendment under ECL 24-0301 (6), and as such was

invalid because it had not been preceded by notice and a hearing. We now reverse.

Contrary to the conclusion reached by the court of first instance, we find that the failure to designate the subject property as a wetlands area on the 1981 tentative map does not preclude regulation of the property pursuant to the act. While ECL 24-0107 (1) defines "freshwater wetlands" in part as "lands and waters of the state as shown on the freshwater wetlands map", we construe this provision to refer only to that period of time *subsequent* to the promulgation of the final freshwater wetlands map. Prior to the promulgation of a final map, the DEC may continue to designate additional wetland areas, regardless of whether these areas are included in a tentative map filed in the County Clerk's office. The strict interpretation of ECL 24-0107 (1), employed by the Supreme Court, Richmond County, conflicts with ECL 24-0703 (5), which expressly provides that "[p]rior to the promulgation of the final freshwater wetlands map in a particular area * * * no person shall conduct, or cause to be conducted, any activity for which a permit is required * * * on any freshwater wetland unless he has obtained a permit from the commissioner". This language proscribes activity on freshwater wetlands prior to the adoption of a final map unless a permit is first obtained and "confers * * * jurisdiction in [the] DEC for the entire period between the effective date of the act and promulgation of a final map" *(Matter of Tri Cities Indus. Park v Commissioner of Dept. of Envtl. Conservation,* 76 AD2d 232, 235-236, *lv denied* 51 NY2d 706).

Additionally, the Commissioner's regulations support the view that the DEC may seek to regulate wetlands at any time prior to the promulgation of a final map, regardless of whether the property is listed on a previously filed tentative map. For example, 6 NYCRR part 662, which covers the time period prior to the adoption of a final map *(see, Goldhirsch v Flacke,* 114 AD2d 998, *lv denied* 67 NY2d 604), contains a definition of "freshwater wetlands" which only requires that wetland areas be listed as such in the DEC's regional office *(see,* 6 NYCRR 662.1 [k]). Conversely, 6 NYCRR parts 663 and 664, which become applicable after a final map has been promulgated for a given area, expressly define "freshwater wetlands" in part as those areas which meet the aforementioned definition found in ECL 24-0107 (1), that is, lands and waters of the State which are listed on the freshwater wetlands map *(see,* 6 NYCRR 663.2 [1]; 664.2 [f]). Hence, the Commissioner has officially interpreted the act to mean that

the restrictive definition of ECL 24-0107 (1) applies only after the final map for a given area has been adopted. Prior to the adoption of a final map, the absence of a specific parcel of property from a tentative map does not preclude the DEC from subsequently designating and regulating that area as a wetland. It is firmly established that the construction given statutes by the agency responsible for their administration is entitled to great deference and shall be upheld if not irrational or unreasonable *(see, Matter of Haines v Flacke,* 104 AD2d 26). We discern no basis for disturbing the Commissioner's interpretation herein. The Freshwater Wetlands Act represents a legislative attempt to strike a balance between the preservation and protection of environmentally valuable lands and the rights of landowners *(see generally, Matter of Drexler v Town of New Castle,* 62 NY2d 413; *Spears v Berle,* 48 NY2d 254). Where, as here, no final map has as yet been promulgated by the Commissioner, a limitation of the DEC's jurisdiction to only those wetlands which appear on a previously filed tentative map conflicts with the "tentative" nature of the map itself as well as with the statements of policy and findings contained within the act *(see,* ECL 24-0103, 24-0105).

For these reasons, we further conclude that the court of first instance erred in finding that the DEC could not make additional wetlands designations unless it first provided individual affected landowners with notice and a hearing to amend the 1981 tentative map. There is no discernable basis in the act for imposing a notice and hearing requirement upon the DEC whenever it wishes to alter a tentative map, for such a map is by its very nature subject to unilateral amendment by the DEC as that agency continues to inventory wetlands in a given area. Moreover, the mapping procedures embodied in ECL 24-0301 do not contemplate individualized hearings for property owners each time the DEC updates the tentative map kept in its own offices, but instead direct only that a single public hearing be held for all landowners and the general public once the DEC has completed the tentative map and is prepared to promulgate a final map *(see,* ECL 24-0301 [4], [5]). Additionally, the Commissioner has rationally interpreted the map amendment procedures of ECL 24-0301 (6) to apply only to the amending of *final* freshwater wetlands maps. Hence, 6 NYCRR 664.7, the regulation which governs the amendment of wetlands maps, is limited only to *final* maps by virtue of the definition of "freshwater wetlands map" which appears in 6 NYCRR 664.2 (g). As such, the petitioners were not entitled to notice and a hearing under the act prior to the tentative designation of their property as wetlands.

We likewise reject the petitioners' contention that prior notice and a hearing were required in order to provide them with due process of law. While it is axiomatic that a person cannot be deprived of property without due process of law, no cognizable deprivation has occurred herein, for the petitioners have not yet applied to the Commissioner for an interim permit to use and develop the subject property nor has a final map been promulgated *(see generally, United States v Riverside Bayside Homes,* 474 US 121; *Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510, *cert denied* — US —, 107 S Ct 574; *Matter of Spears v Berle, supra; Matter of Pichel v Wells,* 38 AD2d 632). The mere tentative designation of the subject property as wetlands by the DEC's regional staff is insufficient, standing alone, to constitute a "taking" of the petitioners' land requiring due process of law. As such, the "taking" issue is not ripe for judicial review. Moreover, since the act provides for a full hearing prior to the granting or denial of a permit or the promulgation of a final map, the requirements of due process are satisfied by the act.

We further find unpersuasive the petitioners' equitable estoppel contention. Absent extraordinary circumstances, the doctrine of estoppel is inapplicable to a governmental entity which acts in its governmental capacity *(see, Matter of Daleview Nursing Home v Axelrod,* 62 NY2d 30; *Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88; *Hartford Ins. Group v Town of N. Hempstead,* 118 AD2d 542). No such circumstances exist herein, for the 1981 wetlands map filed in the County Clerk's office was clearly labeled a *tentative* map.

The factual contentions raised by the parties concerning the propriety of the DEC's interim designation of the subject property as wetlands cannot be resolved on the sparse evidence in the instant record and the proceeding must be dismissed. The petitioners' recourse is to apply to the Commissioner for an interim permit or to await promulgation of the final map. A permit application is preferable, as such an application is not a concession that the DEC has jurisdiction over the subject property, and the petitioners will be free to contest the propriety of the designation with scientific and technical evidence at the ensuing permit application hearing *(see, e.g., Goldhirsch v Flacke,* 114 AD2d 998, *supra; Harbour Point v Flacke,* 104 AD2d 927, *lv denied* 64 NY2d 610). Moreover, the petitioners will also be entitled to demonstrate why they should be issued a permit if the act is applicable to their property, and the hearing record will provide the courts with an adequate basis for judicial review once an initial

determination is made by the Commissioner. We emphasize that we do not pass upon the merits of the parties' factual contentions; we merely note that the contentions cannot be intelligently resolved upon the present evidence and that they should be presented to the Commissioner in the first instance, as they involve complex scientific data within his area of expertise.

Finally, the DEC should move with all possible haste to promulgate the final map.

Motion by the petitioners to expand the record on appeal from an order and judgment (one paper) of the Supreme Court, Richmond County (Kuffner, J.), dated February 28, 1986, to include two affidavits sworn to by them.

Ordered that the motion is denied (see, 10 Carmody-Wait 2d, NY Prac § 70:309; *Broida v Bancroft,* 103 AD2d 88; *Liberty Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co.,* 93 AD2d 814, *affd* 59 NY2d 1021). Thompson, J. P., Weinstein, Kunzeman and Harwood, JJ., concur. *[See,* 131 Misc 2d 109.]