OPINION OF THE COURT
Peter P. Cusick, J.
This is a special proceeding in the nature of a CPLR article 78 proceeding commenced by Thomas C. Jorling, as Commissioner of the New York State Department of Environmental Conservation (the DEC). In brief, the DEC seeks a review of the determination and order of the Freshwater Wetlands Appeals Board (the FWAB) dated November 9, 1989 which, inter alia, removed certain property in Richmond County from wetlands designation.
1. BACKGROUND
Respondents Dora Homes, Inc., Clinton and Barbara Ann List, and Mr. and Mrs. Peter Alaskewicz are the owners of certain real property in Richmond County which was designated as protected freshwater wetlands on the last freshwater wetlands map filed in the office of the Richmond County Clerk on September 1, 1987 (the final map). These properties are entitled to the benefit of the review procedures set forth in ECL 24-1104 before the Freshwater Wetlands Appeals Board. In fact, these respondents did appeal their designations before the FWAB (docket Nos. 87-13, 87-18, 87-21, 87-92, 88-10), and the Board issued its written order and determination November 9, 1989 reversing the decision of the DEC to place the subject properties on the final map.
The property in question is part of the Bloesser’s Pond wetland, designated as AR-16 on the final map. It is composed of a northern portion, located on tax blocks 6793, 6794, and 6795, within which the respondents’ lots are located, and a southern portion, 9 to 10 acres in size, which occupies most of blocks 6785, 6786, 6787, and 6790. DEC claims that the two portions are connected by a narrow vegetative corridor, thus increasing the size of Bloesser’s Pond wetland, which was indicated as one large wetland on the final map. This corridor narrows into a small intermittent stream draining the northern portion into a deciduous swamp located in the southern portion of the property designated as a wetland. Together, the northern and southern portions exceed the 12.4-acre threshold (ECL 24-0301 [1]).
*882 As originally identified, the southern portion of property designated as a wetland was less than 12.4 acres. As such, the DEC originally intended to demonstrate that said portion was a wetland of "unusual local importance” (ECL 24-0301 [1]; 6 NYCRR 664.2 [f]). In order to be designated as a wetland of unusual local importance, the property must provide certain benefits set forth in ECL 24-0105 (7) (ECL 24-0301 [1]). These include flood control, wildlife habitat, watersheds and subsurface water protection, recreation, pollution treatment, erosion control, outdoor biophysical laboratories, open spaces, and nutrient sources.
Further field work by DEC employees resulted in the identification of the large northern portion within which respondent’s property is located. Together, the northern and southern portions total approximately 14 acres. Consequently, the DEC claims it ceased gathering evidence of unusual local importance (i.e., the benefits set forth above), because the statute does not require such a showing for wetlands greater than 12.4 acres in size.
2. THE FWAB’S RULING
After receipt of DEC documents and examination of two DEC employees, the FWAB ruled that there was no evidence in the record showing that the corridor connecting the northern portion with the southern portion was a wetlands. DEC relied on this corridor as a connecting wetland when it designated them on the final wetlands map.
At the hearing, DEC’s motion for permission to introduce evidence of present wetlands conditions was denied. DEC takes the position that this denial was an error for two reasons. First, it prevented DEC from meeting its burden of proof that the parcel is presently a wetland by a preponderance of the evidence[1] or by clear and convincing evidence.[2] Second, it prevented DEC from offering evidence tending to show that the northern portion, standing alone, qualifies as a wetland of unusual local importance.
Although the FWAB excluded evidence and testimony of postdesignation site visits from its consideration, the FWAB did permit DEC to submit affidavits and other documents to "clarify how and why the Department believes that the existing record shows that each parcel within the mapped wetland *883 was properly designated.”[3] It has been the position of the FWAB that the enabling legislation gives it powers akin to appellate review. Consistent with this position, its procedural guidelines permit the submission and review of evidence material to the propriety of wetlands designation at the time it was made. It has made various rulings consistent with that position.
Ultimately, FWAB ruled and determined that the DEC failed to meet its burden of proving by a preponderance of the evidence that the connecting corridor was a wetland at the time of its mapping, and that the northern portion is now unregulated inasmuch as it was less than 12.4 acres without the corridor at the time of mapping.
The FWAB removed block 6795, lots 22, 27, 31, 36, and 42, block 6794, lots 1, 7, 11, 16, 19, 25, 31, 36, 42, and 48, and block 6793, lots 27, 29, 31, 33, 35, and 37 from wetlands regulation under its authority to reverse any order or decision of the Commissioner (ECL 24-1103 [2]).[4]
3. JUDICIAL REVIEW UNDER ARTICLE 78
This court’s authority to review the FWAB’s action is limited to those considerations set forth in CPLR 7803 (ECL 24-1105). The floor debates in the Assembly, and the remarks of the bill’s sponsor, make it clear that no change was intended for an article 78 review of the determinations of the Board. The court will address each of the standards set forth in CPLR 7803 as they may apply to the particular circumstances of this case, seriatim.
The FWAB clearly acted within its jurisdiction (CPLR 7803 [2]) in reversing the Commissioner’s order or decision designating the narrow corridor between the northern and southern portions of AR-16 (ECL 24-1103 [2]), and in specifically finding that the latter’s designation was not supported by substantial evidence on the whole record (ECL 24-1103 [2] [d]).
. The FWAB also acted pursuant to lawful procedure (CPLR *884 7803 [3]). DEC complains that the refusal of the FWAB to permit evidence of present wetlands conditions denied DEC the opportunity to meet its obligation to show by the applicable standard of proof that the subject parcel is now a wetland. On this issue, the DEC posits that evidence it proffered, but which was excluded, proved that the connecting corridor it found to be a wetland, is in fact a wetland. The FWAB declined to consider the evidence because it tended to show present conditions, and was not offered to clarify the prior mapped designation made on September 1,1987.
It was not error for the FWAB to exclude this evidence. In this court’s view, this ruling, and the procedure under which it was made, was proper.
DEC was not the intended beneficiary of the remedial legislation contained in ECL 24-1104. Nothing in the legislative history suggests that the DEC is to be given expanded authority to designate wetlands anew by presenting current evidence of such to the FWAB. The exclusive procedure authorized by the Legislature for the designation of freshwater wetlands continues to be set forth in ECL 24-0301, unimpaired by the remedial legislation at issue herein.
The DEC is limited to the theories and evidence supporting those theories existing at the time of its designation, i.e., at the time of the mapping on September 1, 1987. Postdesignation theories should not be considered (Matter of Tilles v Williams, 119 AD2d 233 [2d Dept]).
The minor factual differences between the Tilles case (supra) and the situation sub judice does not change the result. In Tilles, the new theory was initially made in opposition to article 78 relief. Here, it was made at the time of the FWAB hearing. The distinction is merely one of procedure, not substance.
Also unavailing is the DEC’S argument that the language in the statute gives it the right to offer evidence of present conditions. To this end, it relies on that portion of the statute which shifts to it the “affirmative burden of demonstrating by a preponderance of the evidence that the parcel or part thereof is a wetland” (ECL 24-1104 [1]; emphasis added).
It must be remembered that the language of this statute was approved by the Legislature on June 29, 1987 and signed by the Governor on July 23, 1987. By its terms, it took effect on September 1, 1987, the same day the DEC filed its final map designating the wetlands in question. A statute speaks as *885 of the time it takes effect (McKinney’s Cons Laws of NY, Book 1, Statutes § 93). When it took effect, the DEC, essentially simultaneously, designated and identified certain parcels as wetlands. Consequently, the statute can be read to mean that at the hearing the DEC has the burden of showing that the parcel is a wetland as of the day of designation, i.e., September 1, 1987 and not as of the date of the hearing. The literal sense of words, as propounded by DEC, are not always adhered to, and literal meaning can give way in appropriate circumstances, if necessary to effectuate the legislative intent. (McKinney’s Cons Laws of NY, Book 1, Statutes § 94.) If the statute were construed to permit evidence of present wetlands conditions at the hearing, it would impermissibly give the FWAB the power to engage in substitution of its own judgment for that of the agency (see, Matter of Flacke v Freshwater Wetlands Appeals Bd., 87 AD2d 898). It would permit the FWAB to designate wetlands in contravention of the DEC’s sole authority to do so. In addition, as discussed hereinabove, it would permit the FWAB to act as a de novo adjudicatory trial-like tribunal, in contravention of its clear purpose as a reviewing body. (Supra; ECL 24-1103 [2].)
The DEC also attempts to assign error to the FWAB’s decision at the hearing not to permit redirect examination of two of its witnesses, Joseph Pane, the supervisor of DEC’s Region II Fish and Wildlife Division, and John Cryan, a DEC biologist who had conducted field mapping. During the morning session of June 8, 1989, cross-examination of these witnesses was conducted by respondent’s lawyers as well as by FWAB members. After the lunch break, the FWAB made its rulings without allowing redirect examination.
Contrary to DEC’s contentions, there is nothing requiring the FWAB to permit redirect examinations. It can point to no rule of law or agency regulation mandating such a procedure.
The formal rules of procedure may be disregarded in administrative hearings (Matter of Simpson v Wolansky, 38 NY2d 391, 395; cf., Matter of Brown v Ristich, 36 NY2d 183). The fundamental requirements of fairness include the entitlement to be fully apprised of the proof to be considered, an opportunity to cross-examine witnesses, inspect documents, and offer evidence in rebuttal (Matter of Simpson v Wolansky, supra). DEC argues that it had no opportunity to complete its direct case, but the record reflects that it was in fact given an opportunity to do so prior to any cross-examination of Pane and Cryan. The order of introducing evidence and the time *886 when it may be introduced are matters left generally to the sound discretion of the trial court (or here, the officers conducting the hearing) (Feldsberg v Nitschke, 49 NY2d 636, rearg denied 50 NY2d 1059).
The determination made by the FWAB was neither arbitrary or capricious nor an abuse of discretion. (CPLR 7803 [3].) The holding in the Tilles case (supra) makes clear that a body sitting in review, be it a court or administrative board, need not consider postdesignation evidence which has the effect of changing the basis or grounds for the underlying determination. The question for consideration is whether the decision or determination by the FWAB was arbitrary or capricious at the time it was made.
Further, the record before FWAB sufficiently demonstrates that the DEC did not meet its burden of showing that the corridor connecting the northern portion of AR-16 was a wetlands at the time of its mapping. The DEC witness Pane said that another employee, Wayne Richter (who never testified), observed wetland vegetation and water in the area. When asked to identify those records showing the existence of a vegetation and/or water connection between the northern and southern sections, at the time of mapping, he was unable to do so. He presented a list of exhibits showing indicia of wetlands, but nothing contained therein specifically placed the indicia of Wetlands within the corridor as mapped. The testimony of John Cryan regarding a July 2, 1985 field visit was not afforded any weight by FWAB due to inconsistencies with certain exhibits he helped to prepare. Further, the FWAB believed that the detail incorporated into Cryan’s testimony was the result of postmapping field visits indicative of present conditions. The credibility of witnesses is ordinarily a function of the trier of fact (Dominguez v Manhattan & Bronx Surface Tr. Operating Auth., 46 NY2d 528; Sorokin v Food Fair Stores, 51 AD2d 592). Nothing in the record compels this court to disturb the FWAB’s assessment of the witness’s credibility.
4. FURTHER DISCUSSION
New ECL 24-1104 revived the heretofore dormant FWAB to function as a tribunal to review wetlands designations or other DEC orders or decisions. As such, its powers are not unlike a court sitting in review in an article 78 proceeding. It must limit its review to whether the determination in question conforms to the laws of the State, is within the Commis *887 sioner’s jurisdiction or authority, was made in accordance with procedures required by laws or regulations, is supported by substantial evidence on the whole record, is not arbitrary or capricious, or an abuse of discretion (ECL 24-1103 [2]; Weinberg, Practice Commentary, McKinney’s Cons Laws of NY, Book YlVi, ECL 24-1103, at 509). Section 24-1103 was not repealed by the new section 24-1104 and they must be harmonized and read together when possible (McKinney’s Cons Laws of NY, Book 1, Statutes § 98). The biggest change effectuated by section 24-1104, other than the speedy procedural mechanism, was to shift the burden of proof from the property owner to the DEC (compare, Weinberg, Practice Commentary, op. cit., and ECL 24-1104).
It is clear from a reading of the statute, and the legislative debates, that the FWAB was intended solely as a reviewing body (see, Matter of Flacke v Freshwater Wetlands Appeals Bd., supra) and not as one to hear claims of wetlands designations de novo. The power to identify and map wetlands ab initio remains with the Commissioner of the DEC. (ECL 24-0301.) Had the FWAB heard and considered evidence of present conditions tending to show a wetlands and determined that the subject property was a wetland for reasons other than those originally relied upon by DEC at the time of mapping, it clearly would have exceeded its authority. Yet, this is precisely what the DEC was asking the FWAB to do when it attempted to introduce documents and reports of recent field visits.
Even more striking is the complete about-face by the DEC. In a letter to the FWAB dated April 7, 1988, the counsel for DEC went to great lengths to set forth its position that the FWAB is a limited review board not entitled to open "the designation issue to a full adjudicatory process.” It argued at the time that the FWAB could not create its own evidentiary record and thereby supersede the DEC’S decision-making functions. Now, when it appears that the DEC is having difficulty supporting its original designation of part of AR-16 as a wetlands with convincing evidence, it argues the opposite hypothesis. The DEC’S prior position seriously belies its present one.
The purposes of ECL article 24 are well known and respected. The DEC is rightfully charged with the responsibility to: "preserve, protect and conserve freshwater wetlands and the benefits derived therefrom, to prevent the despoliation and destruction of freshwater wetlands, and to regulate use and *888 development of such wetlands to secure the natural benefits of freshwater wetlands, consistent with the general welfare and beneficial economic, social and agricultural development of the state.” (ECL 24-0103.)
Equally important is the Legislature’s finding that the mapping process has created undue hardship for many property owners in Richmond County and that procedural remedies be afforded to owners of designated wetlands not so designated on the 1981 tentative map. The policy in protecting freshwater wetlands is balanced by the countervailing but rightful interests of landowners. (L 1987, ch 408, § 1.)
Generally, remedial legislation such as this are to be liberally construed in order to carry out the reforms intended and to promote justice. (McKinney’s Cons Laws of NY, Book 1, Statutes § 321.) Here, the Legislature clearly intended to give certain owners of property designated as wetlands a fair and impartial forum for hearing their cries of injustice. It also intended to restrict the informational and resource advantage enjoyed by DEC, and did so by shifting the burden of proof. In order to eliminate the mischief sought to be remedied by this statute, the legislation must be construed in such a way so as to give the FWAB determinations some teeth. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 95.) Accordingly, the FWAB’s determinations should be given great weight and consideration in the face of DEC’s "footdragging and stonewalling”[5] which flies in the face of the statute’s purpose to provide expeditious hearings, relatively simplified procedures, and swift and final determinations.
There being no basis for relief under CPLR article 78, the petition is in all respects denied, and this proceeding is dismissed. The temporary restraining order contained in the order to show cause dated December 18, 1989, is recalled and vacated.

. As to respondent’s Dora Homes and List parcels.

, As to respondent’s Alaskewicz parcel.

. Interim decision, Appeal of Bisignano (FWAB docket No. 87-4, May 3, 1988).

. The FWAB also determined in the same order and decision, that the designation of the remainder of AR-16 south of the narrow corridor, beginning at Stevenson and South Goff Avenues, was proper and subject to the DEC’s continuing jurisdiction as regulated wetlands. The property of that FWAB decision is the subject of another action (Wedinger v Department of Envtl. Conservation), and is not before this court at the present time.

. See, Jorling v Freshwater Wetlands Appeals Bd., 147 Misc 2d 165,171.