OPINION OF THE COURT
 

 Read, J.
 

 The principal issue in this appeal is whether due process requires actual notice before the New York State Department of Environmental Conservation (DEC) designates a landowner’s property as a wetland and places it on a freshwater wetlands map. We hold that actual notice is not required so long as DEC complies with the statutory notice provisions of ECL 24-0301
 
 *886
 
 (4) and (5), which are reasonably calculated to inform affected landowners that their property is located in a protected wetland. We further conclude that substantial evidence supports the DEC Commissioner’s determination that DEC complied with these statutory notice provisions in the facts of this case.
 

 I.
 

 In 1975, the Legislature enacted the Freshwater Wetlands Act (ECL art 24), which protects the state’s freshwater wetlands by prohibiting landowners from engaging in certain activities on property designated as a wetland unless they first obtain a permit from DEC (ECL art 24, tit 7). To this end, the Act authorizes the Commissioner to prepare a freshwater wetlands map which, once finalized, identifies those properties subject to the Act’s regulatory scheme (ECL 24-0301). In the interim period between the Act’s effective date (Sept. 1, 1975) and final mapping, all wetlands were already subject to DEC’s jurisdiction
 
 (Matter of Wedinger v Goldberger,
 
 71 NY2d 428, 439 [1988]).
 

 Mapping is carried out in two stages: first, DEC develops a tentative map, subject to a public hearing at which additions or deletions may be proposed, which is followed by a final map (ECL 24-0301). DEC must provide written notice of the public hearing to “each owner of record as shown on the latest completed tax assessment rolls, of lands designated as such wetlands as shown on [the tentative] map”
 
 [1]
 
 and to the affected local governments, and it must cause notice of the public hearing to be published in two local newspapers at least once (ECL 24-0301 [4]). Second, after the public hearing, DEC must promulgate the final wetlands map by order, and again give notice to “each owner of lands, as shown on the latest completed tax assessment rolls, designated as such wetlands” and to the affected local governments by mailing a copy of the order, and it must cause the order’s publication in local newspapers (ECL 24-0301 [5]). DEC must also file the final map in the office of the clerk of affected local governments.
 

 As we have previously recognized, the Act’s mandate to map wetlands statewide presented DEC with a “formidable task” (Wedinger, 71 NY2d at 436). In Columbia County alone, DEC
 
 *887
 
 devoted considerable resources throughout the early 1980’s to the mapping enterprise. DEC staff examined aerial photographs of the entire county to identify potential wetlands. Field checks were performed to verify whether the areas preliminarily identified from the photographs were actually wetlands. Then the boundaries of field-verified wetlands were transferred from the photographs to 7.5 minute quadrangle maps. These maps became the tentative freshwater wetlands maps for purposes of notification of the public hearing.
 

 While the Act directs DEC to notify landowners
 
 “as
 
 shown on the latest completed tax assessment rolls,” it does not instruct DEC how to find out which landowners listed on the tax assessment rolls are the owners of lands identified as wetlands on the tentative wetlands maps. To bridge this gap between the tentative maps and the tax rolls, DEC staff compared the tentative maps to Columbia County’s tax maps in order to find the block and lot number of parcels affected by the mapping, and DEC then notified the owners of those parcels as their names and addresses appeared on the most recent tax assessment roll.
 

 This method of identifying affected landowners is not foolproof. Tax maps are only updated every four to five years. Tax rolls are also outdated to the extent they reflect the owners of parcels at the end of the year preceding the tax bill, and do not contain information concerning title changes occurring midyear. In addition, the information in the tax maps or tax rolls may be incomplete or inaccurate, as was the case here.
 

 Decedent Frank Zaccaro
 
 [2]
 
 and his predecessor in title, Joseph A. Lauri (a relative), owned property in the wetlands mapping area, and their names and addresses were accurately listed on the tax assessment roll during the relevant time periods. Nonetheless, Mr. Lauri did not receive actual notice of the tentative map and public hearing, and decedent did not receive actual notice of the final map.
 

 Neither decedent nor his predecessor was actually notified because the tax maps did not show their parcel in the correct location. Specifically, the wetland at issue, “H-12,” was located in the area depicted on tax map 143. Decedent’s parcel was shown on tax map 133, not tax map 143. Accordingly, he was listed on the tax assessment roll as the owner of a parcel
 
 *888
 
 located on tax map 133,
 
 [3]
 
 which apparently depicts the area just north of the area depicted on tax map 143.
 

 In 1997, 12 years after the final freshwater wetlands map for Columbia County was promulgated and filed, decedent was charged with violating the Act by engaging in numerous prohibited activities on his land without a permit. After an administrative hearing, at which decedent asserted the defense of lack of actual notice, the Commissioner sustained certain of the charges. He ordered decedent to implement remedial measures aimed at restoring the wetland, and imposed a penalty of $8,000, $6,000 of which was to be forgiven if decedent completed the remedy within 60 days of the order’s receipt.
 

 Decedent commenced a CPLR article 78 proceeding in Supreme Court to challenge the Commissioner’s determination. Upon transfer of the proceeding, the Appellate Division confirmed the determination and dismissed decedent’s petition (298 AD2d 671 [3d Dept 2002]). On this appeal pursuant to CPLR 5601 (b) (1), appellant argues that DEC violated decedent’s constitutional and statutory rights to actual notice of the wetlands mapping because of its reliance on inaccurate tax maps and, in light of the absence of actual notice, DEC should be limited to prospective regulation of the property.
 

 II.
 

 The general rule concerning the due process rights of property owners derives from
 
 Mullane v Central Hanover Bank & Trust Co.
 
 (339 US 306, 314 [1950]). There, the United States Supreme Court reaffirmed that prior to taking action affecting life, liberty or property, the government must give “notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”
 
 (Id.)
 
 Later, in
 
 Mennonite Bd. of Missions v Adams
 
 (462 US 791 [1983]), the Supreme Court applied this principle to an action concerning land, and held that notice by publication alone was insufficient
 
 *889
 
 to protect the due process rights of a mortgagee. Rather, a mortgagee who was “reasonably identifiable” was entitled to actual notice, by mail at the mortgagee’s last known address or through personal service
 
 {id.
 
 at 798). While we have not considered the notice provisions of the Freshwater Wetlands Act in light of these principles, we have applied them in other contexts involving real property, including tax liens and special assessments.
 

 In
 
 Congregation Yetev Lev D’Satmar v County of Sullivan
 
 (59 NY2d 418 [1983]), the assessor mailed notice of a tax sale to the last record owner of the land. Accordingly, a property owner who had obtained title by adverse possession did not receive actual notice of the sale. We found that due process “requires the assessor to give personal notice to all parties readily ascertainable who have a substantial interest in the property and the assessor is charged with knowledge of facts which an examination of the real property and tax records reveals”
 
 (id.
 
 at 425, citing
 
 Mennonite Bd. of Missions).
 
 Constructive notice was acceptable in this circumstance because the address of the owner by adverse possession was not “reasonably identifiable,” and the assessor was not required to undertake “extraordinary efforts” to discover the claim of adverse possession
 
 (id.
 
 at 424, 426).
 

 In
 
 Matter of McCann v Scaduto
 
 (71 NY2d 164 [1987]), we expanded our holding in
 
 Congregation.
 
 In
 
 McCann,
 
 property owners challenged a local law concerning tax lien sales, which provided that publication in a “newspaper of general circulation” was all that was required
 
 (id.
 
 at 170). Reaffirming
 
 Congregation,
 
 we held that “where the interest of a property owner will be substantially affected by an act of government, and where the owner’s name and address are known, due process requires that actual notice be given”
 
 (McCann,
 
 71 NY2d at 176). We noted the importance of this rule given that “the [tax] sales create immediate, substantial adverse consequences for the property holder”
 
 (id.).
 

 We next addressed the due process rights of property owners in
 
 Matter of ISCA Enters. v City of New York
 
 (77 NY2d 688, 699 [1991]), holding that “notice by mail is a constitutional precondition to a proceeding that will adversely affect the property interest of any party whose name and address are reasonably ascertainable.” There, property owners had challenged the constitutionality of a New York City Administrative Code provision, which required publication; mail notification to all owners, mortgagees and lienors who had filed “owner’s registra
 
 *890
 
 tion” cards (the list used for generating tax bills); and mail notification to those listed on the latest annual record of assessed valuations. The property owners claimed that they had not received actual notice of the tax delinquencies because their addresses were not up to date on the latest annual record of assessed valuations.
 

 We concluded that while notice by publication alone would be inadequate, the Administrative Code provision satisfied the minimum requirements of due process. In finding that the plaintiffs had received all the process that was their due, we balanced the needs of the government with the rights of property owners. We rejected plaintiffs’ request that the City be required to search all property tax records to locate actual affected parties because such an effort would “impose a very substantial burden on the City”
 
 (id.
 
 at 701). While the burden did not excuse the City from meeting its notice requirements, it was a valid consideration when assessing the reasonableness of the City’s actions. Moreover, a search of the public records would not have yielded the addresses of the property owners, who themselves had some obligation to maintain their records with the City for tax billing purposes.
 

 We next considered the due process rights of property owners in
 
 Garden Homes Woodlands Co. v Town of Dover
 
 (95 NY2d 516 [2000]). There, a town board imposed a special assessment on property owners and provided notice only by publication, as required in the Town Law. We found that the special assessment “substantially affected” the property owner’s interest in the land, and that publication alone was insufficient notice: without notice of the hearing, a property owner could not challenge the special assessment, and a failure to challenge the assessment would result in imposition of a lien on the land
 
 (id.
 
 at 520). Thus,
 
 Garden Homes
 
 instructs that special assessments, like tax liens, substantially affect the rights of property owners.
 

 Most recently, in
 
 Kennedy v Mossafa
 
 (100 NY2d 1 [2003]), we reaffirmed that due process is a flexible concept that requires balancing of the owner’s interests against the government’s interests. In
 
 Kennedy,
 
 the town sent the property owner’s tax bill to the address in the tax roll. The owner claimed that she did not receive the notice because she had moved. She also claimed that she had notified the town of her new address, but that the town had neglected to update its tax rolls. The owner failed to pay the bill, and the property ultimately was sold in a delinquency proceeding.
 

 
 *891
 
 In holding that the procedures used by the town satisfied due process, we observed that the reasonableness of the town’s actions had to be looked at in light of the property owner’s actions, and that the property owner bore some responsibility for keeping her address up to date with the town. Further, the property owner had paid other tax bills sent to the allegedly wrong address, and at least one of these tax bills disclosed the delinquent taxes. Thus,
 
 Kennedy
 
 teaches that actual notice is not always required, and that the key consideration is whether the notification procedures employed are reasonable in view of all the circumstances.
 

 Thus, the issue here is whether the notification provisions of ECL 24-0301 (4) and (5) — as carried out by DEC in this case— were “reasonably calculated” to provide decedent with notice that his property was within the boundaries of wetland H-12. To determine reasonableness, we must first decide whether the wetlands mapping “substantially affect [ed]” decedent’s interests and if so, whether his identity as an affected landowner was “reasonably ascertainable.”
 

 Designation on a wetlands map substantially affects the landowner’s rights by restricting the property’s use. Nonetheless, this designation is considerably less intrusive than is the filing of a tax lien
 
 (see Wedinger,
 
 71 NY2d at 439 [holding that designation as wetland does not amount to a taking as a property owner may still develop land subject to an administrative permit]).
 

 Here, decedent’s identity as an affected landowner was not reasonably ascertainable from the tax assessment roll. As previously discussed, DEC was required to draft maps of wetlands and then to relate the wetlands represented on these draft maps to the tax assessment roll. DEC reasonably relied on the county tax maps to identify the block and lot number of the parcels affected by the wetlands mapping as a means to cull from the tax assessment roll the names and addresses of those landowners to be notified. The error was in decedent’s parcel number. Accordingly, there is no reason to suspect that a search of public records would have identified him as the owner of property within the boundaries of wetland H-12. DEC was not required, as appellant suggests, to hire a surveyor or title searcher to satisfy due process.
 

 Moreover, DEC did not disregard the statutory notice provisions in ECL 24-0301 (4) and (5) by virtue of its use of tax maps in addition to the tax assessment roll. Again, the tax as
 
 *892
 
 sessment roll alone was insufficient to identify the owners of properties within the boundaries of tentatively mapped wetlands. Article 24 provides no direction on how to connect such a wetland to a property owner listed in the tax assessment roll, and DEC used the tax maps as a reasonable way to accomplish the linkage. Indeed, tax maps are intended to be integrated with tax assessment rolls
 
 (see
 
 RPTL 502 [2] [providing that a parcel’s “lot, block and section number or other identification numbers” on an approved map “shall be deemed a sufficient description of such parcel” on the tax assessment roll]).
 

 In summary, DEC mailed notices to all the potentially affected landowners who could be identified from the tax assessment roll, and published notice of the tentative and final wetlands maps in local papers. In so doing, the requirements of due process and of ECL 24-0301 (4) and (5) were met notwithstanding the absence of actual notice to decedent.
 

 Finally, appellant argues that DEC may not “retroactively” regulate the property because decedent did not receive actual notice that his land was on the wetlands map until 1997. We need not address this argument, which conflates notice and jurisdiction, because it presupposes a failure to comply with constitutional and statutory notice requirements, a claim that we have rejected.
 

 Accordingly, the judgment of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Rosenblatt and Graffeo concur.
 

 Judgment affirmed, without costs.
 

 [1]
 

 . Prior to 1977, the Act only required notice to the “owner of record.” A 1977 amendment (L 1977, ch 654, § 3) added the language “as shown on the latest completed tax assessment rolls.”
 

 [2]
 

 . Mr. Zaccaro died during the pendency of this appeal. The Appellate Division substituted his executor, Louise Zaccaro, as petitioner-appellant.
 

 [3]
 

 . In the administrative proceedings below, Mr. Lauri submitted copies of the property tax bills for the land in question for the years 1981-1986, 1988-1991 and 1994-1998. The tax bills for 1981-1986 identify the property as 30 acres located at block 2, lot 57 of tax map 133; the later tax bills identify the property as 28.30 acres located at block 1, lot 39 of tax map 143. Each of these tax bills describes the property as bounded by State Route 23 and lists the same neighboring property owners. There was no lot 39 on the 1978 and 1984 versions of tax map 143 examined by DEC staff.